# 18-1597

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 18-1597

◄━━━►

RAVIDATH LAWRENCE RAGBIR, NEW SANCTUARY
COALITION OF NEW YORK CITY, CASA DE MARYLAND, INC.,
DETENTION WATCH NETWORK, NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL LAWYERS GUILD,
NEW YORK IMMIGRATION COALITION,

*Plaintiffs-Appellants*,

—v.—

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

GEOFFREY S. BERMAN,
*United States Attorney for the
Southern District of New York,
Attorney for Defendants-Appellees.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2715

STEVEN J. KOCHEVAR,
BENJAMIN H. TORRANCE,
*Assistant United States Attorneys,
Of Counsel.*

RONALD D. VITIELLO, in his official capacity as Deputy Director and Senior Official Performing the duties of the Director of U.S. Immigration and Customs Enforcement, THOMAS DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement, SCOTT MECHKOWSKI, in his official capacity as Deputy New York Field Office Director for U.S. Immigration and Customs Enforcement, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States, UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellees.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 2

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . 3

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Procedural History . . . . . . . . . . . . . . . . . . . . 4

    B.  Statutory History . . . . . . . . . . . . . . . . . . . . . . 4

    C.  Factual Background . . . . . . . . . . . . . . . . . . . 7

        1.  Enforcement of the
            Immigration Laws . . . . . . . . . . . . . . . . . 7

        2.  Plaintiff Ragbir . . . . . . . . . . . . . . . . . . . 8

        3.  Plaintiffs' First Amendment Action . . 12

    D.  The District Court's Decision . . . . . . . . . . . 14

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT I—The District Court Lacked
    Jurisdiction over Plaintiffs' Claims . . . . . . . . . 20

    A.  Section 1252(g) Eliminated the District
        Court's Jurisdiction . . . . . . . . . . . . . . . . . . 20

PAGE

B.  Section 1252(b)(9) Also Eliminated the District Court's Jurisdiction. . . . . . . . . . .  27

C.  There Is No Constitutional Obstacle to Applying 8 U.S.C. § 1252 Because Plaintiffs Have No Constitutional Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

    1.  *AADC* Forecloses Plaintiffs' Claims . .  31

    2.  Plaintiffs Have No First Amendment Retaliation Claim. . . . . . . . . . . . . . . . .  39

D.  The Suspension Clause Does Not Apply Here . . . . . . . . . . . . . . . . . . . . . . . .  44

POINT II—Plaintiffs Have Failed to Establish the Necessary Factors for a Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

A.  Plaintiffs Have Failed to Establish Irreparable Harm . . . . . . . . . . . . . . . . . . .  48

B.  The Equities Are in the Government's Favor, and the Public Interest Is Served by Enforcing the Immigration Laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

# TABLE OF AUTHORITIES

*Cases*:

*Anaya Arce v. United States*,
  899 F.3d 796 (9th Cir. 2018) . . . . . . . . . . . . 25, 26

*Bacolitsas v. 86th & 3rd Owner, LLC*,
  702 F.3d 673 (2d Cir. 2012) . . . . . . . . . . . . . . . . 48

*Calcano-Martinez*,
  232 F.3d 328 (2d Cir. 2000) . . . . . . . . . . . . . . . . 26

*Carafas v. LaVallee*,
  391 U.S. 234 (1968) . . . . . . . . . . . . . . . . . . . . . . . 45

*CBF Indústria de Gusa S/A v.*
  *AMCI Holdings, Inc.*,
  850 F.3d 58 (2d Cir.) . . . . . . . . . . . . . . . . . . . . . . 28

*Clark v. Martinez*,
  543 U.S. 371 (2005) . . . . . . . . . . . . . . . . . . . . . . . 21

*Connick v. Thompson*,
  563 U.S. 51 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 41

*County of Nassau v. Leavitt*,
  524 F.3d 408 (2d Cir. 2008) . . . . . . . . . . . . . . . . 19

*Devitri v. Cronen*,
  289 F. Supp. 3d 287 (D. Mass. 2018) . . . . . . . . . 27

*Devitri v. Cronen*,
  290 F. Supp. 3d 86 (D. Mass. 2017) . . . . . . . . . . 27

*Duamutef v. INS*,
  386 F.3d 172 (2d Cir. 2004) . . . . . . . . . . . . . . 25, 46

PAGE

*Elgharib v. Napolitano,*
600 F.3d 597 (6th Cir. 2010) . . . . . . . . . . . . . . . 23

*Fabrikant v. French,*
691 F.3d 193 (2d Cir. 2012) . . . . . . . . . . . . . . . . 39

*Hamama v. Adducci,*
258 F. Supp. 3d 828 (E.D. Mich. 2017) . . . . . . . . 27

*Hartman v. Moore,*
547 U.S. 250 (2006). . . . . . . . . . . . . . . . . . . . . . . . 42

*INS v. St. Cyr,*
533 U.S. 289 (2001). . . . . . . . . . . . . . . . . . . *passim*

*J.E.F.M. v. Lynch,*
837 F.3d 1026 (9th Cir. 2016) . . . . . . . . . . . . . . 28

*Jama v. INS,*
329 F.3d 630 (8th Cir. 2003) . . . . . . . . . . . . . . . 26

*Jean-Baptiste v. Reno,*
144 F.3d 212 (2d Cir. 1998) . . . . . . . . . . . . *passim*

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018). . . . . . . . . . . . . . . . . . . . . . 29

*Jones v. Cunningham,*
371 U.S. 236 (1963). . . . . . . . . . . . . . . . . . . . . . . 45

*Lamar Advertising of Penn, LLC v. Town of
Orchard Park,*
356 F.3d 365 (2d Cir. 2004) . . . . . . . . . . . 3, 5, 20

*Liranzo v. United States,*
690 F.3d 78 (2d Cir. 2012) . . . . . . . . . . . . . . . . . 19

*Lozman v. City of Riviera Beach*,
    138 S. Ct. 1945 (2018). . . . . . . . . . . . 40, 41, 42, 43

*Luna v. Holder*,
    637 F.3d 85 (2d Cir. 2011) . . . . . . . . . . . . . . . 7, 24

*Magnotti v. Kuntz*,
    918 F.2d 364 (2d Cir. 1990) . . . . . . . . . . . . . 39, 42

*Monell v. New York City Dep't of Social Services*,
    436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . . 40

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010). . . . . . . . . . . . . . . . . . . . . . . 47

*Mozzochi v. Borden*,
    959 F.2d 1174 (2d Cir. 1992) . . . . . . . . . . . . . 39, 42

*Mt. Healthy Bd. of Ed. v. Doyle*,
    429 U.S. 274 (1977). . . . . . . . . . . . . . . . . . . . . . . 42

*Munaf v. Geren*,
    553 U.S. 674 (2008). . . . . . . . . . . . . . . . 44, 45, 47

*Nken v. Holder*,
    556 U.S. 418 (2009). . . . . . . . . . . . . . . . 50, 51, 52

*Ogunwomoju v. United States*,
    512 F.3d 69 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 46

*Ragbir v. Holder*,
    389 F. App'x 80 (2d Cir. 2010) . . . . . . . . . . . . . . . 9

*Ragbir v. Holder*,
    565 U.S. 816 (2011). . . . . . . . . . . . . . . . . . . . . . . . 9

*Ragbir v. Lynch*,
    640 F. App'x 105 (2d Cir. 2016) . . . . . . . . . . . . . . 9

*Ragbir v. Sessions*,
    No. 18 Civ. 236, 2018 WL 623557
    (S.D.N.Y. Jan. 29, 2018) . . . . . . . . . . . . . . . . . . . . 12

*Ragbir v. United States*,
    537 U.S. 1089 (2002). . . . . . . . . . . . . . . . . . . . . . . . 8

*Ragbir v. United States*,
    No. 17 Civ. 1256, 2018 WL 1446407
    (D.N.J. Mar. 23, 2018) . . . . . . . . . . . . . . . . . . . . . . 12

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) . . . . . . . . . . . . . 32, 37

*Reno v. American-Arab Anti-Discrimination
    Committee ("AADC")*,
    525 U.S. 471 (1999). . . . . . . . . . . . . . . . . . . . *passim*

*Ruiz-Martinez v. Mukasey*,
    516 F.3d 102 (2d Cir. 2008) . . . . . . . . . . . . . . 7, 46

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) . . . . . . . . . . . . . . . . . 47

*Sebelius v. Auburn Regional Med. Ctr.*,
    568 U.S. 145 (2013). . . . . . . . . . . . . . . . . . . . . . . . 23

*Silva v. United States*,
    866 F.3d 938 (8th Cir. 2017) . . . . . . . . . . . . . . . 23

*Simmonds v. INS*,
    326 F.3d 351 (2d Cir. 2003) . . . . . . . . . . . . . 45, 46

*Singer v. Fulton County Sheriff*,
    63 F.3d 110 (2d Cir. 1995) . . . . . . . . . . . . . . 39, 42

PAGE

*Singh v. Gonzales,*
 499 F.3d 969 (9th Cir. 2007) . . . . . . . . . . . . . . . 26

*Sorrell v. IMS Health Inc.,*
 564 U.S. 552 (2011). . . . . . . . . . . . . . . . . . . . . . . 48

*Ticor Title Ins. Co. v. Cohen,*
 173 F.3d 63 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 49

*United States v. Ragbir,*
 38 F. App'x 788 (3d Cir. 2002) . . . . . . . . . . . . 8, 33

*Webster v. Doe,*
 486 U.S. 592 (1988). . . . . . . . . . . . . . . . . . . . . . . 23

*Winter v. NRDC,*
 555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . 47

*Xiao Ji Chen v. DOJ,*
 471 F.3d 315 (2d Cir. 2006) . . . . . . . . . . . . . . . . 7

*Yusov v. Shaughnessey,*
 671 F. Supp. 2d 523 (S.D.N.Y. 2009) . . . . . . . . . 36

*Statutes*:

8 U.S.C. § 1225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8 U.S.C. § 1252 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub. L. No. 104-208 . . . . . . . . . . . . . . . . . . . . . . . 5, 23

Pub. L. No. 109-13 . . . . . . . . . . . . . . . . . . . . . . 6, 7, 23

viii

PAGE

*Rules*:

Fed. R. App. P. 43(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Regulations*:

8 C.F.R. § 1001.1(p) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 18-1597

───────────

RAVIDATH LAWRENCE RAGBIR, NEW SANCTUARY
COALITION OF NEW YORK CITY, CASA DE MARYLAND,
INC., DETENTION WATCH NETWORK, NATIONAL
IMMIGRATION PROJECT OF THE NATIONAL LAWYERS
GUILD, NEW YORK IMMIGRATION COALITION,

*Plaintiffs-Appellants,*

—v.—

RONALD D. VITIELLO, IN HIS OFFICIAL CAPACITY AS
DEPUTY DIRECTOR AND SENIOR OFFICIAL PERFORMING
THE DUTIES OF THE DIRECTOR OF U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT, THOMAS DECKER, IN HIS
OFFICIAL CAPACITY AS NEW YORK FIELD OFFICE
DIRECTOR FOR U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, SCOTT MECHKOWSKI, IN HIS OFFICIAL
CAPACITY AS DEPUTY NEW YORK FIELD OFFICE
DIRECTOR FOR U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, KIRSTJEN M. NIELSEN, IN
HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND
SECURITY, UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, JEFFERSON B. SESSIONS III, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF THE UNITED
STATES, UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellees.*[1]

───────────

[1]  As provided by Fed. R. App. P. 43(c), the public
officers named in this caption have been automatically

---

**BRIEF FOR DEFENDANTS-APPELLEES**

---

### Preliminary Statement

Ravidath Ragbir and his co-plaintiffs seek review of the execution of a final order that Ragbir be removed from the United States, contending that immigration authorities have selectively enforced the order due to Ragbir's outspoken advocacy regarding immigration. But Congress has repeatedly legislated to eliminate district court jurisdiction over just such claims challenging the execution of removal orders. And the Supreme Court has held that claims like plaintiffs'—selective enforcement of a removal order on the basis of First Amendment-protected activity—cannot overcome Congress's clear instruction that district courts have no jurisdiction to review them.

As the Supreme Court has held, that preclusion of district court jurisdiction is constitutional in this type of case. By holding that an alien unlawfully in the United States—as Ragbir is—may not assert selective enforcement as a defense to removal, the Court has foreclosed Ragbir's present lawsuit. Even if there were some exception to that rule for particularly outrageous government conduct—an exception no court has ever

---

substituted for their predecessors, and the official title of Scott Mechkowski has been substituted for the title given in the district court caption.

applied—Ragbir's claims are highly similar to those the Supreme Court has already rejected. Because the unchallenged order of removal in this case is lawful, it provides a valid basis for the nation's immigration authorities to remove Ragbir, and under the case law of the Supreme Court and this Court, those authorities' motives may not be questioned.

Congress thus acted constitutionally in precluding district court review of claims like Ragbir's, and the district court here correctly held it lacked jurisdiction to consider Ragbir's claims or to enjoin his removal. Its decision to deny a preliminary injunction and partly dismiss plaintiffs' complaint should be affirmed.

## Jurisdictional Statement

The district court lacked jurisdiction for the reasons described below. The district court partly denied plaintiffs' motion for a preliminary injunction and partly dismissed the complaint by order entered on May 23, 2018. (Joint Appendix ("JA") 32, 263–85). Plaintiffs filed a timely notice of interlocutory appeal on May 25, 2018. (JA 32, 286–88). Accordingly, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1). That jurisdiction extends to review of the entirety of the district court's decision because the partial dismissal of plaintiffs' complaint was "inextricably intertwined" with the partial denial of plaintiffs' motion for a preliminary injunction. *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 372 (2d Cir. 2004).

## Issues Presented

1. Whether 8 U.S.C. § 1252 deprived the district court of jurisdiction over plaintiffs' claims of unconstitutional retaliatory execution of Ragbir's valid final order of removal.

2. Whether, if the district court had jurisdiction, plaintiffs have established an entitlement to a preliminary injunction.

## Statement of the Case

### A. Procedural History

On February 9, 2018, plaintiffs commenced this action in district court, seeking declaratory and injunctive relief barring defendants from retaliatory enforcement of the immigration laws against Ragbir and others nationwide. (JA 37–80). On February 12, 2018, plaintiffs filed a motion for a preliminary injunction staying Ragbir's removal and enjoining defendants from retaliatory enforcement of the immigration laws nationwide. (JA 20). On May 23, 2018, the district court dismissed plaintiffs' complaint to the extent it sought to declare unlawful or enjoin Ragbir's removal, and denied plaintiffs' motion for a preliminary injunction to the extent it sought to stay Ragbir's removal. (JA 263–85). This interlocutory appeal followed.

### B. Statutory History

In 1996, Congress amended the Immigration and Nationality Act ("INA") through passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Among other things, IIRIRA reformed

judicial oversight of the immigration system. *See* 8 U.S.C. § 1252 (codifying IIRIRA's judicial review provisions, including later revisions discussed below).

IIRIRA eliminated district court jurisdiction to oversee the removal of aliens, placing that task exclusively before the courts of appeals through petitions for review. As stated in the first sentence of 8 U.S.C. § 1252(b)(9), added by IIRIRA, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order [of removal] under this section," i.e., in a petition for review to the courts of appeals. IIRIRA, Pub. L. No. 104-208, § 306, 110 Stat. 3009 (codified at 8 U.S.C. § 1252(b)(9) (2000)). Furthermore, § 1252(g), as enacted by IIRIRA, provided for "exclusive jurisdiction": "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." *Id.* (codified at 8 U.S.C. § 1252(g) (2000)).

As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), § 1252(g) was "designed to give some measure of protection" to immigration authorities' discretionary decisions regarding the enforcement of removal orders: Congress provided that if those decisions "are reviewable at all, they at least will not be made the bases for

separate rounds of judicial intervention outside the streamlined process that Congress has designed." 525 U.S. 471, 485 (1999). Indeed, the "theme" of IIRIRA as a whole was to "protect[ ] the Executive's discretion from the courts," and consistent with that, § 1252(g) in particular was "directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 486–87; *accord Jean-Baptiste v. Reno*, 144 F.3d 212, 218 (2d Cir. 1998) (Congress crafted § 1252(g) "to expedite the removal of excludable and deportable aliens, especially criminal aliens" (quotation marks and alterations omitted)).

In 2005, Congress strengthened those protections against judicial review outside the petition-for-review mechanism. After the Supreme Court held that district courts could continue to review certain criminal aliens' final orders of removal under the general habeas statute of 28 U.S.C. § 2241, *INS v. St. Cyr*, 533 U.S. 289, 314 (2001), Congress enacted the Real ID Act, which repeatedly inserted language into the relevant provisions of § 1252 clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 [authorizing mandamus] and 1651 [the All Writs Act] of such title." Real ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231 (quoted language codified at 8 U.S.C. § 1252(g); substantially identical language codified at 8 U.S.C. § 1252(a)(2)(A), (B), (C), (a)(4), (a)(5), (b)(9)). Thus, the Real ID Act "eliminate[ed] the availability of habeas corpus relief in the United States District

Courts for aliens seeking to challenge orders of removal entered against them." *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008). However, to address the *St. Cyr* Court's concerns regarding the availability of a judicial forum for questions of law raised by criminal aliens, the Act provided that all aliens, including criminal aliens, could bring petitions for review raising such "constitutional claims or questions of law" in the courts of appeals. Pub. L. No. 109-13, § 106, 119 Stat. 231 (codified at 8 U.S.C. § 1252(a)(2)(D)); *see Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011); *Xiao Ji Chen v. DOJ*, 471 F.3d 315, 327 n.6 (2d Cir. 2006). This Court has upheld the Real ID Act's provisions against a Suspension Clause challenge. *Luna*, 637 F.3d at 95.

## C. Factual Background

### 1. Enforcement of the Immigration Laws

United States Immigration and Customs Enforcement ("ICE"), an agency within the U.S. Department of Homeland Security ("DHS"), conducts investigative and enforcement operations to implement the United States' immigration laws. (JA 197). In addition to its headquarters in Washington, D.C., ICE operates through regional field offices throughout the country. (JA 197). According to guidance issued by DHS, "[t]he exercise of prosecutorial discretion with regard to any alien who is subject to . . . removal in accordance with law shall be made on a case-by-case basis in consultation with the head of the field office component . . . that initiated or will initiate the enforcement action." (JA 213). In addition, "[DHS] personnel may initiate

enforcement actions against removable aliens . . . and should act consistently with the President's enforcement priorities identified in his Executive Order and any further guidance." (JA 213). The same guidance prioritizes the removal of aliens convicted of a criminal offense or who are subject to a final order of removal. (JA 211).

Since January 2017, defendant-appellee Thomas R. Decker has served as the Field Office Director for ICE's New York Field Office. (JA 196). On April 6, 2017, in a meeting with representatives of immigrant activist organizations that was held in part at Ragbir's counsel's request, Decker stated he "intended to carefully scrutinize requests for administrative stays of removal, and that [he] would grant such stays only in extraordinary cases." (JA 200). He further "stated that if [an alien] has a final order and there are no legal impediments preventing removal, [he] will execute the order of removal." (JA 200).

### 2. Plaintiff Ragbir

Ragbir is a native and citizen of Trinidad and Tobago. (JA 148). In 1994, Ragbir was admitted to the United States as a lawful permanent resident. (JA 148). However, in 2001, Ragbir was convicted, following a jury trial, of wire fraud and conspiracy to commit wire fraud. (JA 149). Ragbir's convictions were affirmed by the United States Court of Appeals for the Third Circuit. *United States v. Ragbir*, 38 F. App'x 788 (3d Cir. 2002). The Supreme Court denied Ragbir's petition for a writ of certiorari from that decision. *Ragbir v. United States*, 537 U.S. 1089 (2002).

Because Ragbir's convictions constituted aggravated felonies under the INA, 8 U.S.C. § 1101(a)(43)(M)(i), (U), they rendered him removable from the United States, 8 U.S.C. § 1227(a)(2)(A)(iii). (JA 149). In 2006, ICE placed Ragbir in removal proceedings based on his 2001 convictions, and in March 2007, Ragbir became subject to a final order of removal and lost his lawful permanent resident status. (JA 149–50); *see* 8 C.F.R. § 1001.1(p).

In the decade after he became subject to a final order of removal, Ragbir raised a series of challenges to his immigration and criminal proceedings. On March 23, 2007, Ragbir filed a petition for review of his final order of removal and a motion for a stay of removal with this Court. (JA 150). On August 12, 2010, this Court denied Ragbir's petition for review by summary order, and denied as moot his motion for a stay of removal. *Ragbir v. Holder*, 389 F. App'x 80 (2d Cir. 2010). The Supreme Court denied Ragbir's petition for a writ of certiorari. *Ragbir v. Holder*, 565 U.S. 816 (2011).

On March 16, 2012, Ragbir filed a motion for reconsideration with the Board of Immigration Appeals ("BIA"). (JA 150). On May 15, 2012, construing Ragbir's motion to reconsider as a motion to reopen as well, the BIA denied the motion. (JA 150). On June 12, 2012, Ragbir filed a second petition for review with this Court, for review of the BIA's denial of his motion to reconsider and, as construed, to reopen. (JA 150–51). On March 4, 2016, this Court issued a summary order dismissing Ragbir's second petition for review. *Ragbir v. Lynch*, 640 F. App'x 105 (2d Cir. 2016).

On November 30, 2012, Ragbir filed a petition for a writ of coram nobis in the United States District Court for the District of New Jersey, challenging his criminal convictions. *Ragbir v. United States*, No. 12 Civ. 7380 (D.N.J.). That petition was voluntarily dismissed (JA 151), but on February 22, 2017, Ragbir filed a second petition for a writ of coram nobis challenging his criminal convictions, *Ragbir v. United States*, No. 17 Civ. 1256 (D.N.J.), which is fully submitted and remains pending.

While Ragbir was raising these challenges to his immigration proceedings, ICE released Ragbir from immigration detention and granted him a series of discretionary administrative stays of removal. (JA 150–51). ICE initially released Ragbir from immigration detention in 2008 because his first petition for review and motion for a stay of removal before this Court triggered ICE's forbearance policy. (JA 150). On January 4, 2012, after this Court had denied Ragbir's first petition for review and motion for a stay of removal, ICE granted Ragbir an administrative stay of removal, effective until December 22, 2012. (JA 150). In February 2013, ICE granted Ragbir a renewed administrative stay, which was eventually extended until March 10, 2016. (JA 151). ICE granted Ragbir a final renewed administrative stay in January 2016, shortly before this Court dismissed Ragbir's second petition for review in March 2016. (JA 151). Ragbir's last administrative stay of removal was set to expire on January 19, 2018. (JA 151).

On November 16, 2017, Ragbir requested a renewed administrative stay of removal, based on his

pending coram nobis petition in New Jersey and a request for a presidential pardon. (JA 201). In December 2017, Decker concluded that these legal challenges had a low likelihood of success and, accordingly, that ICE would not exercise its discretion to grant Ragbir a further stay of removal. (JA 202).

Following Decker's decision, ICE's New York Field Office worked to develop an operational plan to accomplish Ragbir's removal. (JA 202–03). In formulating these plans, ICE took into account the probability of demonstrations opposing Ragbir's removal, solely for the purpose of ensuring the safety of all persons involved, including Ragbir himself. (JA 154). In addition, although the decision to remove each alien was made separately, ICE attempted to coordinate Ragbir's removal with the removal of Jean Murat Montrevil. (JA 203–05). ICE did so because Decker was concerned that each might attempt to evade removal upon learning of the other's arrest. (JA 204). Although ICE was able to detain Montrevil on January 3, 2018, it was unable to detain Ragbir at that time. (JA 205).

On January 11, 2018, Ragbir reported to the ICE New York Field Office and met with Deputy Field Office Director Scott Mechkowski. (JA 206). Ragbir's wife and legal representative were also present at the meeting. (JA 206). During the meeting, Mechkowski informed Ragbir that ICE had denied his request for a renewed administrative stay of removal and was detaining him for purposes of removal. (JA 155). That same day, Ragbir's counsel filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York and a motion for an

emergency stay of removal in Ragbir's coram nobis proceedings in New Jersey, which was granted. (JA 156–57).

On January 29, 2018, the district court in the Southern District of New York granted Ragbir's habeas petition, and ICE released him from custody. *Ragbir v. Sessions*, No. 18 Civ. 236, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018), *appeal docketed*, No. 18-1595 (2d Cir.); (JA 157). On March 23, 2018, the New Jersey district court granted Ragbir's motion for a stay of removal pending the resolution of his coram nobis proceedings. *Ragbir v. United States*, No. 17 Civ. 1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018). Although the government has filed a notice of appeal from the entry of the stay in New Jersey, *Ragbir v. United States*, No. 18-2142 (3d Cir.), Ragbir's stay of removal by the New Jersey court remains in effect.

### 3. Plaintiffs' First Amendment Action

On February 9, 2018, Ragbir and five immigrant-rights organizations filed suit in the Southern District of New York, alleging that defendants have engaged in a nationwide practice of selectively enforcing the immigration laws against immigrant-rights activists, including Ragbir, in retaliation for their political speech. (JA 37–80). Among the organizational plaintiffs is the New Sanctuary Coalition of New York City (the "Coalition"). Ragbir is the Coalition's sole full-time employee. (Brief of Plaintiffs-Appellants ("Br.") 22).

Plaintiffs alleged in broad terms that ICE has engaged in a nationwide pattern of selectively enforcing

the immigration laws against immigrant-rights activists, including through investigations, surveillance, harassment, arrests, detention, and removal. (JA 46–47). However, apart from ICE's alleged surveillance of Ragbir shortly before attempting to execute his final order of removal (JA 54) and ICE enforcement actions as part of Operation Safe City that allegedly target cities rather than individuals (JA 66–68), plaintiffs have not alleged any specific instances of investigations, surveillance, or harassment by ICE. Instead, the only specific instances of retaliatory enforcement alleged by plaintiffs are the removal or attempted removal of Ragbir, Montrevil, and five other aliens, including Amer Othman Adi (JA 54, 66, 72); the service of a Notice to Appear on alien Maru Mora Villalpando (JA 63–64); and the arrest or detention of nine aliens, who are not members of the organizational plaintiffs (JA 61–66). Three of these allegedly detained aliens were arrested following discussion of their or their partner's immigration cases in news media. (JA 61, 64–66). The remaining six allegedly detained aliens were members of Migrant Justice, "a community based non-profit organization of Vermont dairy farmworkers and their families." (JA 61–63).

On February 12, 2018, plaintiffs filed a motion for a preliminary injunction seeking to enjoin defendants from enforcing Ragbir's order of removal and restraining defendants nationwide from enforcing the immigration laws on a selective basis in retaliation for political speech.[2] ICE voluntarily agreed to stay Rabgir's

---

[2] On March 7, 2018, Decker and Mechkowski filed declarations in opposition to plaintiffs' motion for

removal pending resolution of this preliminary injunction motion. (Dist. Ct. ECF 4).

## D. The District Court's Decision

On May 23, 2018, the district court concluded that it lacked jurisdiction over plaintiffs' challenges to the execution of Ragbir's final order of removal and, accordingly, dismissed plaintiffs' complaint to the extent it sought relief "declar[ing] unlawful or . . . enjoin[ing] the execution of the final order of removal against plaintiff Ragbir." (JA 281–82). Because the district court determined that it lacked jurisdiction over that portion of plaintiffs' complaint, the court also denied plaintiffs' motion for a preliminary injunction insofar as it sought to stay Ragbir's removal, and dissolved the agreed-upon stay of Ragbir's removal. (JA 281–82).

---

a preliminary injunction. (JA 148–80). Decker later filed an amended declaration, correcting and explaining certain inaccuracies, and a letter to the district court corrected a mistaken date in Mechkowski's declaration. (JA 196–215, 248); *see* Letter dated March 13, 2018, *Ragbir v. Homan*, No. 18 Civ. 1159 (Dist. Ct. ECF 56). On March 20, 2018, at the district court's direction, defendants and their counsel submitted four more affidavits addressing certain alleged irregularities in Decker's declarations. (JA 216–47). In their brief to this Court, plaintiffs assail the declarants for these filings (Br. 15–17, 47), but fail to note that the district court stated its concerns had been "substantially allayed" by the later explanations (JA 250).

The district court based its decision on the plain text of 8 U.S.C. § 1252(g), which eliminates judicial review of actions arising from the execution of final orders of removal. (JA 274 ("Simply put, section 1252(g) reaches exactly what it says it reaches—'*any* cause or claim . . . arising from the decision or action . . . to execute removal orders.'" (quoting 8 U.S.C. § 1252(g); emphasis in district court's order))). The district court found support for its application of § 1252(g) in *AADC*, which applied § 1252(g) to bar First Amendment retaliation claims challenging immigration enforcement actions taken against alien plaintiffs. (JA 270–72); *see AADC*, 525 U.S. at 474, 492.

Again relying on the plain text of § 1252(g), as well as precedents from the Eighth and Sixth Circuits, the district court rejected plaintiffs' arguments that § 1252(g) does not apply to constitutional claims. (JA 276). The district court observed that although a statute must evince a clear intent to bar constitutional claims, Congress "need not incant magic words" to do so, and the language of § 1252(g) makes Congress's intent to bar constitutional claims sufficiently clear. (JA 275 (quotation marks omitted)).

The district court determined that it was unnecessary to analyze the constitutionality of § 1252(g) as applied to plaintiffs' claims because plaintiffs do not have a constitutional claim to assert. Specifically, the district court reasoned that just as the existence of probable cause defeats a retaliatory prosecution or arrest claim, the existence of an otherwise valid final order of removal defeats a retaliatory execution claim.

(JA 277–78). Similar to an injury flowing from the existence of probable cause rather than from a decision to prosecute, "Ragbir has no [retaliation] claim because the injury to him flows from the final order of removal and not its execution." (JA 278). The district court further relied on *AADC*, which held that "'[a]s a general matter[,] . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation.'" (JA 279 (quoting *AADC*, 525 U.S. at 488)). While noting that this Court had considered permitting a remedy for selective enforcement of immigration laws based on religion, sex, or race, the court distinguished claims of discrimination based on immutable characteristics from claims based on volitional speech, which is subject to strategic use by individuals subject to final orders of removal in a manner that immutable characteristics are not. (JA 280). While volitional speech is protected by the First Amendment, "[Ragbir's] decision to speak does not confer upon him an immunity from the enforcement of a pre-existing final order of removal." (JA 280).

Accordingly, the district court dismissed plaintiffs' claims to the extent they sought to declare unlawful or enjoin Ragbir's removal and denied plaintiffs' motion for a preliminary injunction to the extent it sought to stay Ragbir's removal. This appeal followed.

## Summary of Argument

Plaintiffs challenge the execution of a final order of removal against Ragbir. But Congress has clearly and repeatedly provided that any review of the execution

of a final order of removal from the United States may occur only in a petition for review before a court of appeals. No district court has jurisdiction to consider such a challenge, or to issue any injunction against the execution of a removal order. Accordingly, the district court correctly denied plaintiffs' motion for a preliminary injunction and partially dismissed the complaint. Indeed, the Supreme Court in *AADC* has held that the very type of selective prosecution claim, based on allegedly retaliatory removal in violation of the First Amendment, that plaintiffs raise here is barred by the statutes that deprive district courts of jurisdiction to review the execution of removal orders, 8 U.S.C. § 1252(g) and (b)(9). Since then, Congress has amended those statutes to even more completely and clearly preclude the district courts' jurisdiction. That rule applies to constitutional claims as well, as Congress was unequivocal in barring district court jurisdiction, and expressly channeled constitutional and other claims to petitions for review in the courts of appeals. *See infra* Points I.A, I.B.

There is no constitutional obstacle to applying the jurisdictional bar of § 1252(b)(9) and (g) here because plaintiffs have no constitutional claims to assert. The Supreme Court in *AADC* held that an alien like Ragbir has no constitutional right to assert selective enforcement to prevent his removal from the United States in accordance with a valid order. There is, accordingly, no constitutional doubt about the application of § 1252(g) and (b)(9). Nor does this case, which presents facts strikingly similar to those in the Supreme Court's precedent, and where the removal order is based on Ragbir's criminal conviction accompanied by extensive

judicial process, present circumstances so "outrageous" that any possible exception to *AADC* would apply. To the contrary, permitting even more litigation in this matter would implicate the very potential for delay in enforcement of the immigration laws that the *AADC* Court noted motivated Congress to bar review of the execution of removal orders. *See infra* Point I.C.1.

More broadly, this Court has repeatedly held that it is not appropriate for a court to examine an official's motive when she takes an otherwise legally valid enforcement action, such as an arrest or prosecution—a principle that applies equally to otherwise valid removal actions. Although the Supreme Court has permitted a First Amendment retaliatory arrest case to proceed based on the adoption of an official municipal policy of retaliation, plaintiffs' allegations in this case fall far short of establishing such a policy. Thus, in the same way that the existence of probable cause defeats a retaliatory arrest or prosecution claim, the existence of a valid final order of removal defeats a selective enforcement claim, such as plaintiffs' First Amendment claim here. *See infra* Point I.C.2.

Although the Court need not reach the issue because plaintiffs do not have constitutional claims, the Suspension Clause does not apply to the present case. The Suspension Clause protects core applications of the writ of habeas corpus, in particular review of the legality of detention with release as a remedy. But Ragbir is not in custody, he does not challenge his order of removal, and he does not seek release. Instead, plaintiffs seek judicial oversight of the enforcement of

the immigration laws. The Suspension Clause does not protect such attempts to use the writ of habeas corpus. *See infra* Point I.D.

Finally, although this Court need not consider the question in the first instance, plaintiffs have failed to establish the necessary preliminary injunction factors. They have not demonstrated a likelihood of success on the merits of their claims: assuming *arguendo* plaintiffs have claims, they will be unable to show that retaliation was a but-for cause of Ragbir's removal. They have also not established concrete irreparable harm based on the relatively earlier imposition of Ragbir's inevitable removal. And the public interest does not weigh in favor of a preliminary injunction. The public interest is served when the nation's laws, including the immigration laws, are enforced. *See infra* Point II.

Accordingly, the district court's order should be affirmed.

## ARGUMENT

### Standard of Review

"When reviewing a district court's denial of a preliminary injunction, we review the district court's legal holdings de novo and its ultimate decision for abuse of discretion." *County of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quotation marks omitted). With respect to the district court's dismissal of plaintiffs' complaint on jurisdictional grounds, the Court reviews the district court's legal conclusions *de novo*, and its factual findings for clear error. *Liranzo v. United States*,

690 F.3d 78, 84 (2d Cir. 2012); *Lamar Advertising*, 356 F.3d at 372 (applying *de novo* standard of review to jurisdictional portions of summary judgment decision inextricably intertwined with denial of preliminary injunction).

## POINT I

### The District Court Lacked Jurisdiction over Plaintiffs' Claims

#### A. Section 1252(g) Eliminated the District Court's Jurisdiction

By its plain terms, 8 U.S.C. § 1252(g) eliminates district court jurisdiction over claims attacking decisions or actions to execute removal orders. Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g).[3] Accordingly, the district court correctly held that § 1252(g)

---

[3] Section 1252(g) provides in full: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

bars plaintiffs' challenge to the execution of Ragbir's removal order, and prevents federal courts from staying or enjoining that execution except when considering a petition for review.

The Supreme Court's decision in *AADC*, which construed § 1252(g) in a similar context, is controlling. There, respondents sued the Attorney General for allegedly targeting them for deportation because of their affiliation with a politically unpopular group, in violation of the First and Fifth Amendments. *AADC*, 525 U.S. at 474. As here, the question before the Supreme Court was whether the plain language of § 1252(g) deprived the federal courts of jurisdiction over respondents' suit. *Id.* at 473. The Court ruled that it did. *Id.* at 492.

In reaching that conclusion, the Supreme Court explained that with respect to the "three discrete actions" identified in the text of § 1252(g)—commencement of proceedings, adjudication of cases, and execution of removal orders—§ 1252(g) strips the district courts of jurisdiction. *Id.* at 482. As the Court observed, those actions are committed to the discretion of the Executive, and § 1252(g) was designed to protect that discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487. Indeed, the Court noted that

---

against any alien under this chapter." Following the Homeland Security Act of 2002, the relevant references to the Attorney General in § 1252 are generally read to mean the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

§ 1252(g) "seems clearly designed" to protect the specific type of Executive discretion at issue here: Congress acted to block challenges to the government's refusal to exercise discretion to withhold or terminate removal based on allegations of "selective prosecution" stemming from "improper reliance on political considerations" or "unconstitutional criteria." *Id.* at 484–85 (quotation marks omitted). Congress mandated that those discretionary determinations "will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485. In short, § 1252(g) was designed, and has been interpreted by the Supreme Court, to preclude precisely the type of lawsuit now before this Court.[4]

---

[4] Similarly, before *AADC*, this Court applied § 1252(g) to bar constitutional challenges to the enforcement of orders of removal. In *Jean-Baptiste v. Reno*, the Court held that § 1252(g) precluded federal courts from exercising jurisdiction to enjoin the enforcement of removal orders against criminal aliens who asserted due-process violations. 144 F.3d 212, 214–15, 218 (2d Cir. 1998). While the Court went on to note that the aliens' constitutional claims would be reviewable in a habeas proceeding, *id.* at 218–20, that conclusion does not survive the Real ID Act: as described above, whatever review a criminal alien could previously obtain through habeas is, in the wake of the Real ID Act, now available through a petition for review.

Congress could hardly have made that intent clearer. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) ("where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear"). Indeed, it has done so repeatedly, first enacting § 1252(g) to state that "notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim," IIRIRA, Pub. L. No. 104-208, § 306, 110 Stat. 3009—the version considered in *AADC* and *Jean-Baptiste*—then amending it in 2005 to make that intent even clearer by adding the phrase "statutory or non-statutory" after "any other provision of law" and specifically barring actions under the habeas, mandamus, and All Writs statutes, Real ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231. Since then, other courts of appeal have applied § 1252(g) to constitutional claims. *Silva v. United States*, 866 F.3d 938, 940–41 (8th Cir. 2017) (§ 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "*any* cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Elgharib v. Napolitano*, 600 F.3d 597, 602 (6th Cir. 2010) ("[A] natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution." (quoting 8 U.S.C. § 1252(g)).

While Congress need not specifically use the word "constitutional" or otherwise "incant magic words in order to speak clearly" on this jurisdictional matter, *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013), the legislative intent in § 1252(g) to bar constitutional claims is perfectly clear. Indeed, contrary to plaintiffs' argument (Br. 30), the uses of the

word "constitutional" elsewhere in § 1252 demonstrate that Congress intended to channel constitutional claims into the petition for review process—and, concomitantly through § 1252(g), to prohibit them in other actions. The word "constitutional" appears in 8 U.S.C. § 1252(b)(9), which, as discussed below, is a key provision channeling claims to petitions for review, and applies to plaintiffs' claims here. *See* 8 U.S.C. § 1252(b)(9). The word also appears in § 1252(a)(2)(D), which specifically allows "review of constitutional claims or questions of law," but only when "raised upon a petition for review." *See Luna*, 637 F.3d at 94.[5]

To the extent claims like Ragbir's do not fit into the petition for review process set out in § 1252, Congress has determined, in enacting § 1252(g), that they are not reviewable—as this Court has repeatedly held. In *Jean-Baptiste*, a petition for review was entirely unavailable to plaintiffs because they were criminal aliens (before the Real ID Act had restored the jurisdiction of the courts of appeals to consider a criminal alien's constitutional claims in a petition for review). 144 F.3d at 219–20. Nonetheless, § 1252(g) still applied to bar the criminal alien plaintiffs' constitutional challenges to

———

[5] Plaintiffs also point to § 1252(e)(3)(A)(i). But that provision concerns judicial review by the United States District Court for the District of Columbia of the legality of determinations under 8 U.S.C. § 1225(b) and its implementation—that is, specific issues concerning aliens who have not been admitted to the United States. Those issues are not relevant to the present case.

the enforcement of their removal orders. *Id.* at 218; *accord AADC*, 525 U.S. at 485 ("Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that *if they are reviewable at all*, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." (emphasis added)); *id.* at 492 ("8 U.S.C. § 1252(g) deprives the federal courts of jurisdiction over respondents' claims . . . ."). Later, in *Duamutef v. INS*, when faced with a challenge to immigration authorities' decision not to execute a final order of removal, this Court again held that constitutional claims—in that case, that an alien's rights of due process and equal protection, and under the Eighth Amendment, were violated —are not within the jurisdiction of federal courts to review, even though a petition for review would not have been available in that case. 386 F.3d 172, 177, 180–81 (2d Cir. 2004). Whether or not *Duamutef* addressed the same arguments plaintiffs raise here (Br. 34), it clearly reaffirmed the limitation of the courts' jurisdiction under § 1252(g) to review the execution of a removal order.

Plaintiffs invoke *Anaya Arce v. United States*, 899 F.3d 796 (9th Cir. 2018), appearing to argue that ICE had no power to enforce Ragbir's final order of removal because of his free-speech claim. (Br. 31–32). But *Anaya Arce* involved tort claims arising from the execution of an alien's final order of removal in violation of a judicial stay issued in connection with a petition for review, where the judicial stay legally deprived the government of the discretionary authority to act. 899

F.3d at 799–801. In short, the alien's claims arose "not from the execution of the removal order, but from the violation of" the judicial stay order. *Id.* at 800. No such court order or similar legal impediments exist here. To the extent plaintiffs argue that ICE had a mandatory duty not to execute Ragbir's order of removal on the basis of his speech, they beg the question at the heart of their case—and contradict the holding of *AADC*.

The other cases cited by plaintiffs do not support their argument that § 1252(g) does not apply here. (Br. 26 n.5, 27, 33). Several of these cases did not even cite § 1252(g). *Ruiz-Martinez* and *Luna* upheld the Real ID Act against Suspension Clause challenges, while *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), neither considered § 1252(g) nor concerned challenges to the enforcement of final orders of removal. *Calcano-Martinez*, 232 F.3d 328 (2d Cir. 2000), and *Jama v. INS*, 329 F.3d 630 (8th Cir. 2003), *aff'd sub nom Jama v. ICE*, 543 U.S. 335 (2005), like *Jean-Baptiste*, interpreted the pre-Real ID Act version of § 1252 not to bar habeas jurisdiction over criminal aliens' challenges to their removal proceedings, which, at the time, they could not raise in a petition for review—a result made obsolete by the Real ID Act's 2005 amendments to §1252.[6] The only cases cited by plaintiffs that address

---

[6]  *Jama* also held that § 1252(g) did not apply to a challenge to the Executive's interpretation of a statute, as opposed to a discretionary decision to enforce a final order of removal. *Jama*, 329 F.3d at 632. This holding is not relevant in the present case, where

the issue at hand cut against their position: in *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018), *appeal docketed*, No. 18-1281 (1st Cir.), and *Hamama v. Adducci*, 258 F. Supp. 3d 828 (E.D. Mich. 2017), the district courts held that Congress intended § 1252(g) to eliminate district court jurisdiction over challenges to the enforcement of final orders of removal, but that applying § 1252(g) to bar certain aliens' claims regarding fears of persecution would violate the Suspension Clause. *Devitri*, 289 F. Supp. 3d at 293–94 (referring to earlier decision at 290 F. Supp. 3d 86, 90–93 (D. Mass. 2017), addressing 1252(g) jurisdictional issue); *Hamama*, 258 F. Supp. at 834–42. In the present case, as discussed below, plaintiffs have no constitutional claims, and the Suspension Clause does not apply. As a result, *Hamama*'s and *Devitri*'s interpretation of § 1252(g) can be applied here, but their holdings that § 1252(g) could not constitutionally be applied do not extend to the present case. Section 1252(g) bars district court consideration of plaintiffs' claims.

## B. Section 1252(b)(9) Also Eliminated the District Court's Jurisdiction

The plain text of § 1252(b)(9) also eliminated district court jurisdiction over plaintiffs' claims.[7] Section 1252(b)(9) states,

---

plaintiffs challenge a discretionary decision to enforce a final order of removal.

[7] The district court did not reach 8 U.S.C. § 1252(b)(9) as a basis for dismissal, but this Court

> [w]ith respect to review of an order of re-
> moval under subsection (a)(1), the follow-
> ing requirements apply: . . . [j]udicial re-
> view of all questions of law and fact, in-
> cluding interpretation and application of
> constitutional and statutory provisions,
> arising from any action taken or proceed-
> ing brought to remove an alien from the
> United States under this subchapter
> shall be available only in judicial review
> of a final order under this section. Except
> as otherwise provided in this section, no
> court shall have jurisdiction, by habeas
> corpus under section 2241 of Title 28 or
> any other habeas corpus provision, by
> section 1361 or 1651 of such title, or by
> any other provision of law (statutory or
> nonstatutory), to review such an order or
> such questions of law or fact.

Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 482–83; *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, [8 U.S.C.] § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can

---

may nonetheless affirm on such grounds. *See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir.), *cert. denied*, 138 S. Ct. 557 (2017).

be reviewed *only* through the [petition for review] process.").

Plaintiffs' claims do not require this Court to precisely delineate the outer limits of § 1252(b)(9)'s broad reach—a task the Supreme Court recently declined to undertake in *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality opinion). Instead, plaintiffs' claims are squarely covered by the plain text of § 1252(b)(9) because they challenge an "action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9).

Moreover, *Jennings* suggests that the Supreme Court would apply § 1252(b)(9) to plaintiffs' claims. *See Jennings*, 138 S. Ct. at 839–41 (plurality opinion); *id.* at 853–59 (opinion of Thomas, J.). In *Jennings*, the plurality of three justices concluded that § 1252(b)(9) did not bar aliens' claims challenging their immigration detention without bond hearings. *See id.* at 839. In explaining that result, the plurality expressly contrasted the aliens' detention claims with a challenge to a "decision to . . . seek removal." *Id.* at 841. That is precisely the challenge now before this Court. Two other justices would have held that § 1252(b)(9) applies more broadly, barring any "aliens' claims related to their removal" unless raised in accordance with a petition for review, a rule that would clearly preclude plaintiffs' challenge here. *Id.* at 852–54 (opinion of Thomas, J.). Accordingly, a majority of the Supreme Court would hold that § 1252(b)(9) eliminates district court jurisdiction to hear claims challenging the execution of Ragbir's final order of removal.

*St. Cyr* is not to the contrary. Plaintiffs' reliance on *St. Cyr*'s statement that § 1252(b)(9) "applies only with respect to review of an order of removal under subsection (a)(1)," that is, through petitions for review (Br. 34–35 n.7), overlooks the fact that, at the time *St. Cyr* was decided, § 1252 did not allow certain criminal aliens, including the respondent in *St. Cyr*, to challenge their removal orders through a petition for review. *St. Cyr*, 533 U.S. at 313. Thus, the *St. Cyr* Court held that § 1252(b)(9)—in its pre-Real ID Act form—did not bar the habeas claim of an alien who could not avail himself of the petition for review process. *Id.* at 314. But in response to *St. Cyr*, Congress restored criminal aliens' access to the petition for review process (a process Ragbir has repeatedly utilized, with no success), and strengthened the preclusion of habeas and other actions by adding § 1252(b)(9)'s final sentence unambiguously eliminating jurisdiction "to review . . . questions of law or fact" "arising from any action taken . . . to remove an alien from the United States[,]" "except as otherwise provided in [§ 1252]." 8 U.S.C. § 1252(b)(9).

## C. There Is No Constitutional Obstacle to Applying 8 U.S.C. § 1252 Because Plaintiffs Have No Constitutional Claims

Nor is there any constitutional prohibition on barring district court review of plaintiffs' claims under § 1252(b)(9) and (g), because plaintiffs have no constitutional claim to assert. This result is required by *AADC* and follows from this Court's First Amendment precedents.

### 1. *AADC* Forecloses Plaintiffs' Claims

*AADC* considered and rejected plaintiffs' arguments that the unavailability of habeas relief or a viable petition for review calls into doubt the constitutionality of § 1252(g). The plaintiffs in *AADC* raised precisely the lack-of-forum arguments plaintiffs raise here, but the Supreme Court concluded that "the doctrine of constitutional doubt [does not have] any application" because "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 487–88. The unavoidable effect of that holding is that plaintiffs here have no constitutional claim.

The Supreme Court rested its holding on separation-of-powers principles. The Court observed that selective prosecution claims "invade a special province of the Executive—its prosecutorial discretion." *Id.* at 489. They are "ill-suited to judicial review" and "[j]udicial supervision in this area . . . entails systemic costs of particular concern," including delayed proceedings and diminished prosecutorial effectiveness. *Id.* at 490 (quotation marks omitted). The Supreme Court emphasized that these concerns, which weigh heavily in the field of criminal prosecutions, are "greatly magnified" in the deportation context. *Id.* For example, the Court explained that while delays in criminal proceedings merely "postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law." *Id.* Indeed, "[p]ostponing justifiable deportation (in the hope that the alien's status will change

—by, for example, marriage to an American citizen—or simply with the object of extending the alien's unlawful stay) is often the principal object of resistance to a deportation proceeding, and the additional obstacle of selective-enforcement suits" could inhibit the government's ability to execute the law. *Id.* Moreover, subjecting the Executive's motives and decisionmaking to outside inquiry in deportation cases could chill law enforcement and impede both foreign policy and foreign-intelligence operations. *Id.* at 490–91. The Court further emphasized that "in all cases, deportation is necessary in order to bring to an end *an ongoing violation* of United States law. The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.* at 491. *AADC* thus squarely forecloses plaintiffs' constitutional arguments that § 1252(g) does not bar their claims.

No exception to *AADC*'s rule applies here. In concluding its opinion, the *AADC* Court noted that "[t]o resolve the present controversy, [it] need not rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *AADC*, 525 U.S. at 491; *see Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (acknowledging that "a selective prosecution based on an animus [against an alien's religion, ethnicity, gender, or race] would call for some remedy"). Even if such an exception exists, *see AADC*, 525 U.S. at 491 ("Whether or not there be such exceptions . . . ."), this is not the "rare case."

Ragbir's own history belies any assertion that his treatment is "outrageous." This Court has held that Congress's purpose in passing § 1252(g) was "to expedite the removal of excludable and deportable aliens, *especially criminal aliens*." *Jean-Baptiste*, 144 F.3d at 218 (emphasis added; brackets and quotation marks omitted). Ragbir's final order of removal is the result of his conviction for wire fraud and conspiracy to commit wire fraud. *United States v. Ragbir*, 38 F. App'x 788, 789–90 (3d Cir. 2002). Ragbir's conviction was based on his prominent role in a mortgage fraud scheme. *Id.* at 793–94. In Ragbir's own words, he knowingly accepted fraudulent financial documents for his own financial gain as part of a seven-figure fraud scheme:

> "He [Ragbir's codefendant] told me [i.e., Ragbir] that he wanted me to do business with him through my company [Household Finance Corporation] and set up real estate loans for people that he would send to me as referrals. He told me that he wanted to get the money from the loans and would send people to me to use false names and information and offered to me one point of each loan. One point is one-percent of the dollar amount of each loan. I told him that I would do it for him."
>
> . . . .
>
> "He [Ragbir's codefendant] is the guy that was running the whole scheme through me at my job Household Finance between

December 1998 and now. He has orga-
nized the filing of 1.5 million dollars
worth of fraudulent loans by using me to
process the loans through Household Fi-
nance and allow others to assume false
identities to apply for the loans."

*Id.* at 791–92 (quoting Ragbir's statements to police).

In the aftermath of his crime, Ragbir received ex-
haustive due process. At trial, assisted by counsel, he
was convicted by a jury. He appealed his conviction to
the Third Circuit, which affirmed, and the Supreme
Court denied his petition for certiorari. Ragbir also ob-
tained extensive process in his removal proceedings.
He challenged his final order of removal by petitioning
this Court for review, which was denied, and again cer-
tiorari was denied; moving before the BIA for reconsid-
eration and (as construed) reopening; again petition-
ing this Court for review of the BIA's denial of that mo-
tion, which was denied; twice petitioning the New Jer-
sey district court for a writ of coram nobis; applying for
a presidential pardon; petitioning for habeas corpus
relief when detained; and, finally, filing this case, a
First Amendment challenge to the nationwide enforce-
ment of the country's immigration laws. *See supra*
Statement of the Case C.2. Far from overcoming the
considerations behind *AADC*'s holding, the facts of
Ragbir's case prove prescient the *AADC* Court's con-
cerns about "potential for delay"—and indeed that
"[p]ostponing justifiable deportation . . . is often the
principal object of resistance to a deportation proceed-
ing." 525 U.S. at 490.

In addition, DHS prioritizes the removal of aliens with criminal convictions and aliens with final orders of removal. (JA 211). In April 2017, ICE's current New York City Field Office Director publicly informed activists, in a meeting held partly at Ragbir's counsel's request, that administrative stays of removal, or continuations of stays of removal, would be denied unless supported by specific reasons ICE should exercise its discretion, beyond the hardships incident to any removal. (JA 200). Ragbir's case is consistent with those practices, and cannot be considered "outrageous" when there are such strong, valid reasons for the government to accomplish the challenged removal.

The wider facts alleged in this case also show that it does not come close to the threshold of the "outrageous," "rare case." Contrary to plaintiffs' briefing, they have not alleged that defendants "have retaliated against [plaintiffs] pursuant to an official policy." (Br. 38); *see infra* Point I.C.2. Rather, plaintiffs have alleged that during the past year, ICE—which conducts many thousands of enforcement actions each year—took some form of enforcement action against a small number of individuals scattered throughout the United States. (JA 60–68). These sparse and limited allegations are not the same thing as an "official policy" and are not "so outrageous" as to overcome the considerations enunciated by the Supreme Court. *AADC*, 525 U.S. at 491. Instead, the actions described in plaintiffs' complaint are consistent with ICE's valid enforcement policies and ICE's own explanation of its execution of those lawful policies. (JA 197, 200, 202, 210–15); *see AADC*, 525 U.S. at 487–92.

And even read liberally, plaintiffs have not alleged anything more "outrageous" than what occurred in *AADC*, a remarkably similar case that involved "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals" for removal. 525 U.S. at 488 n.10. Indeed, in that case, the immigration authorities held a press conference to announce they were seeking the aliens' deportation "because of" their expressive affiliation with a disfavored organization. *Id.* at 474. Plaintiffs' allegations that a small number of aliens were targeted based on expressive activities are hardly more outrageous than what the Supreme Court found "assuredly" did not violate the Constitution in *AADC*. *Id.* at 488.

Plaintiffs' outlandish hypotheticals concerning the manipulation of orders of supervision to silence aliens or compel their political speech are far removed from the present case, both legally and factually. (Br. 40). There is no reason to conclude that affirming the district court's decision in this case would make conjectural compelled-silence or compelled-speech clauses in orders of supervision "immune" from judicial review. The terms of orders of supervision have been reviewed by courts in the past, *e.g.*, *Yusov v. Shaughnessey*, 671 F. Supp. 2d 523, 529–31 (S.D.N.Y. 2009) (reviewing constitutionality of conditions of order of supervision under standard requiring conditions to be rationally related to legitimate government interests), *aff'd* 396 F. App'x 780 (2d Cir. 2010), and that review does not necessarily entail a challenge to a decision to execute a final order of removal implicating § 1252(g) or (b)(9).

And of course, as a factual matter, ICE has not forbidden Ragbir from speaking or compelled his speech: it has simply exercised its discretion to execute a final order of removal against a criminal alien that it had previously, temporarily stayed.

Plaintiffs have also failed to establish that they fall into the possible exception to § 1252(g)'s jurisdictional bar that this Court acknowledged in *Rajah*. In *Rajah*, the Court recognized that selective enforcement in violation of constitutional equal-protection principles—based on religion, ethnicity, gender, or race—could be reviewable. 544 F.3d at 438. The Court's brief statement was arguably dicta, as it ultimately held that there was no equal-protection violation, *id.* at 439, and indeed no court has ever found such an unlawful selective enforcement. In any event, even if such a claim is viable, it is subject to only the most forgiving judicial scrutiny: because the power to exclude aliens is a "fundamental sovereign attribute" that is "largely immune from judicial control," immigration enforcement decisions are subject to only "rational basis review." *Id.* (quotation marks omitted). Plaintiffs in the present case have not alleged a constitutional violation under that standard.

In addition, the district court soundly distinguished the claims contemplated in *Rajah*—those based on animus against immutable characteristics—from plaintiffs' claims here, which are based on an alien's volitional choice to engage in speech. The district court observed that, while constitutionally protected, Ragbir's speech cannot be used to shield him from a

pre-existing final order of removal. That logic resonates with the Supreme Court's expressed concern for aliens who utilize judicial proceedings and selective-enforcement allegations to prolong their unlawful stays in the United States. *AADC*, 525 U.S. at 490.

Plaintiffs speculate that aliens will be unwilling or unable to strategically raise selective-enforcement claims because they will be unable to manufacture a basis to allege retaliation. (Br. 42–43). In fact, whenever an alien's speech challenges the enforcement of the immigration laws, ICE's actions enforcing the immigration laws could be alleged to be retaliatory, particularly by those who stand to gain by a delay in removal. This further demonstrates why Ragbir's case cannot be considered "rare": every alien can criticize ICE's enforcement of immigration laws, including the enforcement of a removal order against that same alien, and then conclusorily allege that ICE acted in response to the criticism when ICE attempts to enforce the immigration laws against the speaker. Plaintiffs' own complaint illustrates this dynamic: for example, they allege ICE removed Amer Othman Adi in retaliation for Adi's hunger strike protesting his own removal, demonstrating that an alien can create the basis for his own retaliation claim through volitional speech or other acts. (JA 66). An immutable characteristic, on the other hand, could not be used in a similar fashion. To be sure, Adi was entitled to protest his removal, but his choice to speak should not shield him from enforcement of an otherwise valid removal order. Accordingly, *AADC*'s possible exception does not ap-

ply, and *AADC* disposes of plaintiffs' constitutional arguments against the application of § 1252 to their claims.

## 2. Plaintiffs Have No First Amendment Retaliation Claim

Separately, the district court correctly held that the application of § 1252 to plaintiffs' claims is constitutionally sound because this Court's precedents foreclose a First Amendment retaliation challenge against the execution of a valid final order of removal. This Court has long held that the existence of probable cause defeats a First Amendment retaliatory arrest or prosecution claim. Specifically, this Court has repeatedly held that "if [an] officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then [the Court] will not examine the officer's underlying motive in arresting and charging [a] plaintiff." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995); *accord Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) (holding that because "probable cause to arrest existed independent of the defendants' motive . . . the defendants' motive need not be examined"); *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir. 1990) (qualified immunity); *see Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (applying *Mozzochi* in retaliatory prosecution context); *see also AADC*, 525 U.S. at 490–91 (examining authorities' motives and decisionmaking regarding deportation could chill law enforcement, foreign policy, and foreign intelligence).

The Supreme Court recently created a narrow exception to that rule, but one that does not apply here. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018). In that case, the Court held that a § 1983 plaintiff may assert a retaliatory arrest claim against a municipality under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), even when probable cause existed for the arrest, if the plaintiff alleges that the arrest was the result of "the existence and enforcement of an official policy motivated by retaliation." 138 S. Ct. at 1954. The Supreme Court cabined its holding to "[t]his unique class of retaliatory arrest claims," describing the case as "far afield from the typical retaliatory arrest claim" because "retaliation against protected speech [had been] elevated to the level of official policy." *Id.*

*Lozman* does not apply here. *Lozman* allowed a *Monell* claim against a city on the theory that an official municipal policy of retaliation for speech, crafted by "high-level city policymakers," was a more "troubling and potent form of retaliation" than decisions made by individual officers. *Lozman*, 138 S. Ct. at 1949, 1954.[8] But, first, that holding is limited to *Monell* claims under § 1983. *See Lozman*, 138 S. Ct. at 1954 (claim of "official municipal policy of intimidation" under *Monell* requires "objective evidence of a policy motivated by retaliation to survive" (quotation marks omitted)),

--------

[8] In *Lozman*, the official policy was demonstrated by the city legislature's expression, on the record, of its "consensus" that city resources should be used to "'intimidate'" the plaintiff. *Id.* at 1949.

1955 ("The Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts."). To rely on *Lozman* by analogy here, plaintiffs would need to assert the equivalent of a *Monell* "official policy" claim against the federal government. Under *Monell*, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiffs have not alleged anything that approaches these sorts of official policies. At most, they argue they have alleged a "nationwide pattern or practice" of retaliatory enforcement actions (Br. 38), but their sparse allegations fail to establish such a pattern or practice —and certainly not one so "widespread as to practically have the force of law," *id.* Moreover, defendants' actions have been consistent with DHS's official, non-retaliatory guidance concerning the removal of aliens like Ragbir. (JA 211 (prioritizing the removal of aliens convicted of a criminal offense or who are subject to a final order of removal)). Even were this Court to extend the official policy framework of *Lozman* and *Monell* to the federal government, plaintiffs have not adequately and plausibly alleged any official policy, and therefore *Lozman* is not relevant.

*Lozman* held that proof of such an official policy can establish a causal connection between the arrest and the improper retaliatory motive. 138 S. Ct. at 1954. But absent such a policy, "the complexity of proving (or disproving) causation . . . creates a risk that the courts will be flooded with dubious retaliatory arrest suits." *Id.* at 1953. That reasoning accords with this Court's

holdings that when there is probable cause for an arrest, the motives behind the decision will not be subject to inquiry on the basis of a First Amendment retaliation claim. *E.g.*, *Mozzochi*, 959 F.2d at 1179–80; *Magnotti*, 918 F.2d at 368. In the same way, the existence of a valid final order of removal ensures that the decision to remove an alien is legally valid, and so the decision to execute that order should be upheld against a First Amendment retaliation claim "[w]ithout examining the motive." *Mozzochi*, 959 F.2d at 1179–80.[9]

Nor would plaintiffs' allegations of causation suffice in any event. *Lozman* reiterated that the required link between a defendant's retaliation and a plaintiff's injury is but-for causation. 138 S. Ct. at 1952, 1954–55 (discussing *Mt. Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 281–87 (1977)). As a matter of law, plaintiffs will be unable to establish that retaliation was the but-for

---

[9]   Plaintiffs are incorrect that *Lozman* "limits" the holding of *Hartman v. Moore*, 547 U.S. 250 (2006), which held that the absence of probable cause is necessary to establish a retaliatory prosecution claim. (Br. 45–46). *Lozman* left that holding in place. Although the Court declined to reach the issue of extending *Hartman*'s requirement to all retaliatory arrest claims, it noted the "undoubted force" of arguments for doing so (as well as "substantial arguments" for not doing so). 138 S. Ct. at 1953–54. Regardless, the issue is irrelevant here because this Court has held that the existence of probable cause bars a retaliatory arrest claim, and those precedents are undisturbed by *Lozman*. *See, e.g.*, *Singer*, 63 F.3d at 120.

cause of Ragbir's attempted removal. In particular,
Ragbir has not challenged the validity of his final or-
der of removal, and that order is in itself a sufficient
cause for ICE to attempt to remove Ragbir. Moreover,
Ragbir was doubly prioritized for removal pursuant to
DHS's valid, official policy because of his aggravated
felony conviction and longstanding final order of re-
moval. (JA 211). In light of these sufficient reasons for
ICE to attempt to enforce Ragbir's removal order, any
alleged retaliatory motive cannot be considered a but-
for cause of Ragbir's attempted removal.[10]

Nor should ICE's past discretionary decisions al-
lowing Ragbir to remain in the country while he pur-
sued his challenges to his immigration proceedings
now be held against it. ICE first released Ragbir from
custody in accordance with its longstanding policy of
forbearance when a motion for a stay of removal has
been filed with this Court in connection with a petition
for review. (JA 150). ICE granted Ragbir his final, two-
year administrative stay of removal in January 2016,
shortly before this Court ruled on Ragbir's most recent

_____

[10] Plaintiffs cite *Lozman*'s suggestion that the gov-
ernment bears the burden of establishing it would
have effected the arrest regardless of any retaliatory
animus. (Br. 47); 138 S. Ct. at 1952, 1955. But the
question here is whether plaintiffs have a constitu-
tional claim that would call the application of § 1252(g)
into doubt. Plaintiffs do not have a constitutional claim
—much less an "outrageous" one—when defendants
had multiple, non-retaliatory, sufficient reasons to en-
force Ragbir's final order of removal.

petition for review. (JA 151). ICE never agreed to al-
low Ragbir to stay in the country indefinitely, and its
exercise of discretion in Ragbir's favor, and in support
of orderly judicial consideration of petitions for review,
does not compel the agency to permit Ragbir to stay
any longer. *Cf. AADC*, 525 U.S. at 484 ("Since no gen-
erous act goes unpunished . . . the INS's exercise of
this discretion [in deferring deportation for humani-
tarian reasons] opened the door to litigation in in-
stances where the INS chose *not* to exercise it," a fact
motivating Congress to enact § 1252(g)).

Accordingly, plaintiffs have no claim to assert un-
der the First Amendment, and there is no constitu-
tional obstacle to applying § 1252 to bar plaintiffs'
claims.

## D.  The Suspension Clause Does Not Apply Here

Although this Court need not reach this issue be-
cause plaintiffs have no constitutional claims, the Sus-
pension Clause does not apply here because it protects
core applications of the writ of habeas corpus. *See St.
Cyr*, 533 U.S. at 301. "At its historical core, the writ of
habeas corpus has served as a means of reviewing the
legality of executive detention, and it is in that context
that its protections have been strongest." *Id.*; *see
Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is
at its core a remedy for unlawful executive detention.
The typical remedy for such detention is, of course, re-
lease." (citation omitted)). Here, plaintiffs' claims do
not involve the legality of detention, nor do they seek
release. To the contrary, rather than anything that

could be described as "release" or any change to Ragbir's status, plaintiffs ask the Court to maintain Ragbir in precisely the same position he is in now: at liberty in the United States but subject to a final order of removal. *See Munaf*, 553 U.S. at 693–94 ("the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases," where "what petitioners are really after is a court order requiring the United States to shelter them" from prosecution by foreign government). Essentially, plaintiffs seek judicial oversight of the enforcement of the immigration laws. The Suspension Clause does not protect this attempted use of the writ of habeas corpus.

The Suspension Clause also does not apply because Ragbir is not in custody. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[Custody] is required not only by the repeated references in the [habeas] statute, but also by the history of the great writ." (footnote omitted)).[11] Ragbir is not currently detained nor is he suffering any "curtailment of liberty as to render [him] 'in custody.'" *Simmonds v. INS*, 326 F.3d 351, 354 (2d Cir. 2003). *See* Order dated January 31, 2018, *Ragbir v.*

---

[11] The cases explicating the custody requirement generally concern the reach of the federal habeas statute, as opposed to the Suspension Clause. However, because the Supreme Court has "generally looked to common-law usages and the history of habeas corpus both in England and in this country" in the statutory context, these cases are persuasive—although not necessarily binding—in the constitutional context. *See Jones v. Cunningham*, 371 U.S. 236, 238 (1963).

*Sessions*, No. 18-cv-236 (S.D.N.Y. Jan. 31, 2018) (explaining that the district court's habeas jurisdiction in Ragbir's prior case terminated upon his release from detention)).

A final order of removal renders an alien "in custody" only for the purposes of challenging that final order of removal. Plaintiffs rely on *Simmonds* for the proposition that an alien subject to a final order of removal is in custody for purposes of § 2241, but they overlook that the *Simmonds* holding was limited to challenges to an alien's final order of removal. *See Simmonds*, 326 F.3d at 353–54. This Court has expressly stated that "*Simmonds* does not, in light of its facts, answer the specific custody question presented [by a case challenging the execution of a final order of removal, rather than the order itself]." *Duamutef*, 386 F.3d at 178 (2d Cir. 2004). Moreover, the Real ID Act of 2005 rendered *Simmonds* and the cases on which it relied obsolete "by eliminating the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them." *Ruiz-Martinez*, 516 F.3d at 105. The sole post-Real ID Act case cited by plaintiffs on this point cuts against their position: in *Ogunwomoju v. United States*, this Court held that an alien subject to a final order of removal (and in immigration detention) was not "in custody" for purposes of challenging the alien's state court conviction that resulted in the final order of removal. 512 F.3d 69, 70 (2d Cir. 2008). *Ogunwomoju* therefore confirms that a final order of removal does not render an alien "in custody" for ha-

beas purposes as a general matter, but only with respect to challenges to the order itself. The Suspension Clause does not require a forum for plaintiffs' claims.

## POINT II

### Plaintiffs Have Failed to Establish the Necessary Factors for a Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf*, 553 U.S. at 689–90 (quotation marks and citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *accord Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010). A preliminary injunction cannot issue on the basis of mere speculation or possibility of irreparable harm. *Winter*, 555 U.S. at 21–22. Nor is it "enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010) (emphasis in original).

Because the district court concluded that it lacked jurisdiction, it did not reach the question of whether a preliminary injunction was appropriate. If this Court determines that the district court erred in concluding it lacked jurisdiction, the Court should follow its gen-

eral practice and remand to the district court to conduct the preliminary injunction analysis in the first instance. *See Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 681 (2d Cir. 2012).[12] However, if the Court dispenses with this "prudential rule" and considers the preliminary injunction factors in the first instance, it should affirm the district court's denial of plaintiffs' motion for a preliminary injunction. *Id.* Plaintiffs have failed to establish a likelihood of success because the circumstances of Ragbir's case, particularly his status as a criminal alien, make it unlikely plaintiffs will be able to prove that any alleged retaliatory motive was the but-for cause of Ragbir's attempted removal. *See supra* Point I.C. Plaintiffs have also failed to establish the remaining factors necessary for a preliminary injunction.

## A. Plaintiffs Have Failed to Establish Irreparable Harm

Plaintiffs have not met their burden to show they will suffer irreparable harm absent preliminary relief. To begin with, they incorrectly identify the First Amendment harms relevant to this analysis. "[T]he First Amendment does not prevent restrictions directed at . . . [nonexpressive] conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). The loss of Ragbir's abil-

---

[12] This course is particularly appropriate here where plaintiffs have not even briefed the first factor —their likelihood of success on the merits.

ity to speak in the United States as a result of his removal would be an incidental consequence of immigration laws that are directed at nonexpressive conduct, namely the presence of aliens in the United States without permission. *See AADC*, 525 U.S. at 490 (presence of deportable alien is "continuing violation of United States law"). If the incidental burden on an alien's speech caused by removal constituted irreparable harm, then every alien challenging a removal order could show irreparable harm as a matter of course. This has never been the law.

Plaintiffs have also failed to establish that Ragbir will suffer any concrete, irreparable harms unrelated to his speech. As the district court pointed out, "[a]bsent revocation of [his] final order of removal, relief not sought here, [Ragbir's] removal is inevitable." (JA 293) (citations omitted). Ragbir's asserted harm is therefore not his anticipated removal from the United States, but his removal somewhat earlier than it would otherwise happen. (JA 293). There is no authority for the proposition that the relatively earlier imposition of an inevitable removal constitutes irreparable harm.

The Coalition will not be irreparably harmed by Ragbir's removal. Ragbir's status as a special employee at the Coalition does not establish irreparable harm because the present case raises no competition concerns. The case plaintiffs cast as suggesting otherwise addresses the specific circumstance of relief barring extraordinary former employees from competing with their former employers. *See, e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) ("If the

unique services of such employee *are available to a competitor*, the employer obviously suffers irreparable harm." (emphasis added)). Such cases are inapposite because, to the extent the Coalition has competitors, there is no concern that Ragbir will work for them. Plaintiffs have therefore failed to establish irreparable harm.

**B.   The Equities Are in the Government's Favor, and the Public Interest Is Served by Enforcing the Immigration Laws**

The harms to the government and the public interest weigh decisively against enjoining Ragbir's removal. Enjoining Ragbir's removal will harm the government and the public by delaying the enforcement of United States law. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Nken v. Holder*, 556 U.S. 418, 436 (2009) (quoting *AADC*, 525 U.S. at 490; alterations in original). Moreover, "courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible." *Id.* at 435. In seeking a preliminary injunction, plaintiffs are asking this Court to prolong these harms to the public interest. That harm to the government and the public easily outbalances the asserted harm to Ragbir, namely, removal from the United States now instead of, inevitably, later.

Plaintiffs contend that the public's interest in the enforcement of the immigration laws should be given less weight here because ICE has not sought to remove Ragbir for the past eleven years despite a final order of removal. (Br. 55). This is wrong for a number of reasons, including the fact that ICE initially released Ragbir pursuant to its forbearance policy because of his proceedings before this Court and the fact that this Court ruled on (and denied) Ragbir's most recent petition for review on March 4, 2016, after ICE had exercised its discretion in January 2016 to grant Ragbir a two-year administrative stay of removal. More broadly, it is wrong for plaintiffs to suggest that ICE's favorable exercise of discretion to allow Ragbir to remain in the United States while he availed himself of the fullest extent of due process over the past decade —a practice the Supreme Court has suggested is "commendable" and "generous," *AADC*, 525 U.S. at 944 (quotation marks omitted)—should now be held against it.

The public interest identified by the Supreme Court "in preventing aliens from being wrongfully removed" does not carry any weight in this case because Ragbir is not challenging the merits of his final order of removal. *Nken*, 556 U.S. at 436. There is no dispute that Ragbir does not have a right to remain in the United States. Instead, his claim concerns whether his valid final order of removal was improperly selected for enforcement. But "[t]he contention that a violation [of United States immigration law] must be allowed to continue because it has been improperly selected is not powerfully appealing." *AADC*, 525 U.S. at 491. In the present case, that contention does not outweigh the

public's interest in enforcement of United States law. *See Nken*, 556 U.S. at 436.

Ragbir has received all the process that was due in the eleven years since he became subject to a final order of removal. In *Nken*, the Supreme Court observed that "[t]he [public] interest in prompt removal may be heightened by the circumstances . . . if, for example, the alien . . . has substantially prolonged his stay by abusing the processes provided to him." 556 U.S. at 436 (citing *AADC*, 525 U.S. at 490). Ragbir's use of legal processes has not yet been abusive, but it has been extensive. *See supra* Statement of the Case C.2. Ragbir was free to pursue each of his legal challenges, but the Court should take into account the substantial process Ragbir has received and the long delay in enforcement of Ragbir's final order of removal. Further delay in the enforcement of Ragbir's removal order will cause continuing harm to the public interest, *Nken*, 556 U.S. at 436, and Congress amended the INA, including through 8 U.S.C. § 1252(g), with precisely such harms in mind, *see id.*; *AADC*, 525 U.S. at 487 ("[8 U.S.C. § 1252(g)] is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings.").

## CONCLUSION

**The order of the district court should be affirmed.**

Dated:     New York, New York
           September 28, 2018

                     Respectfully submitted,

                     GEOFFREY S. BERMAN,
                     *United States Attorney for the*
                     *Southern District of New York,*
                     *Attorney for Defendant-Appellee.*

STEVEN J. KOCHEVAR,
BENJAMIN H. TORRANCE,
     *Assistant United States Attorneys,*
          *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 12,687 words in this brief.

GEOFFREY S. BERMAN,
*United States Attorney for the*
*Southern District of New York*

By: STEVEN J. KOCHEVAR,
*Assistant United States Attorney*

**ADDENDUM**

**Statutes**

## 8 U.S.C. § 1252. Judicial review of orders of removal

(a) Applicable provisions

  (1) General orders of removal

Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.

  (2) Matters not subject to judicial review

   (A) Review relating to section 1225(b)(1)

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

    (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

    (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

(C) Orders against criminal aliens

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal

offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

(D) Judicial review of certain legal claims

Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

(3) Treatment of certain decisions

No alien shall have a right to appeal from a decision of an immigration judge which is based solely on a certification described in section 1229a(c)(1)(B) of this title.

(4) Claims under the United Nations Convention

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

(5) Exclusive means of review

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

(b) Requirements for review of orders of removal

With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

(1) Deadline

The petition for review must be filed not later than 30 days after the date of the final order of removal.

(2) Venue and forms

The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. The record and briefs do not have to be printed. The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs.

(3) Service

(A) In general

The respondent is the Attorney General. The petition shall be served on the Attorney General and on the officer or employee of the Service in charge of the Service district in which the final order of removal under section 1229a of this title was entered.

(B) Stay of order

Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise.

(C) Alien's brief

The alien shall serve and file a brief in connection with a petition for judicial review not later than 40 days after the date on which the administrative record is available, and may serve and file a reply brief not later than 14 days after service of the brief of the Attorney General, and the court may not extend these deadlines except upon motion for good cause shown. If an alien fails to file a brief within the time provided in this paragraph, the court shall dismiss the appeal unless a manifest injustice would result.

(4) Scope and standard for review

Except as provided in paragraph (5)(B)—

(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,

(B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,

(C) a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law, and

(D) the Attorney General's discretionary judgment whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion.

No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.

(5) Treatment of nationality claims

(A) Court determination if no issue of fact

If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

(B) Transfer if issue of fact

If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial

district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination

The petitioner may have such nationality claim decided only as provided in this paragraph.

(6) Consolidation with review of motions to reopen or reconsider

When a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.

(7) Challenge to validity of orders in certain criminal proceedings

(A) In general

If the validity of an order of removal has not been judicially decided, a defendant in a criminal proceeding charged with violating section 1253(a) of this title may challenge the validity of the order in the criminal proceeding only by filing a separate motion before trial. The district court, without a jury, shall decide the motion before trial.

(B) Claims of United States nationality

If the defendant claims in the motion to be a national of the United States and the district court finds that—

(i) no genuine issue of material fact about the defendant's nationality is presented, the court shall decide the motion only on the administrative record on

which the removal order is based and the administrative findings of fact are conclusive if supported by reasonable, substantial, and probative evidence on the record considered as a whole; or

(ii) a genuine issue of material fact about the defendant's nationality is presented, the court shall hold a new hearing on the nationality claim and decide that claim as if an action had been brought under section 2201 of Title 28.

The defendant may have such nationality claim decided only as provided in this subparagraph.

(C) Consequence of invalidation

If the district court rules that the removal order is invalid, the court shall dismiss the indictment for violation of section 1253(a) of this title. The United States Government may appeal the dismissal to the court of appeals for the appropriate circuit within 30 days after the date of the dismissal.

(D) Limitation on filing petitions for review

The defendant in a criminal proceeding under section 1253(a) of this title may not file a petition for review under subsection (a) during the criminal proceeding.

(8) Construction

This subsection—

(A) does not prevent the Attorney General, after a final order of removal has been issued, from detaining the alien under section 1231(a) of this title;

(B) does not relieve the alien from complying with section 1231(a)(4) of this title and section 1253(g)1 of this title; and

(C) does not require the Attorney General to defer removal of the alien.

(9) Consolidation of questions for judicial review

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

(c) Requirements for petition

A petition for review or for habeas corpus of an order of removal—

(1) shall attach a copy of such order, and

(2) shall state whether a court has upheld the validity of the order, and, if so, shall state the name of the court, the date of the court's ruling, and the kind of proceeding.

(d) Review of final orders

A court may review a final order of removal only if—

(1) the alien has exhausted all administrative remedies available to the alien as of right, and

(2) another court has not decided the validity of the order, unless the reviewing court finds that the peti-

tion presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

(e) Judicial review of orders under section 1225(b)(1)

(1) Limitations on relief

Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or

(B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

(2) Habeas corpus proceedings

Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—

(A) whether the petitioner is an alien,

(B) whether the petitioner was ordered removed under such section, and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or

has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

(3) Challenges on validity of the system

(A) In general

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

(B) Deadlines for bringing actions

Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

(C) Notice of appeal

A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

Add. 12

### (D) Expeditious consideration of cases

It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

### (4) Decision

In any case where the court determines that the petitioner—

(A) is an alien who was not ordered removed under section 1225(b)(1) of this title, or

(B) has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title. Any alien who is provided a hearing under section 1229a of this title pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1).

### (5) Scope of inquiry

In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

(f) Limit on injunctive relief

(1) In general

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

(2) Particular cases

Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.